STATE OF CONNECTICUT *v.* DOUGLAS LEON PERRY
(5654)
(5655)

SPALLONE, NORCOTT and FOTI, Js.

Argued March 9—decision released May 31, 1988

*Stephen F. Cashman,* special public defender, for the appellant (defendant).

*Vincent J. Dooley,* deputy assistant state's attorney, for the appellee (state).

SPALLONE, J. The sole issue presented by these appeals is whether the trial court erred by ordering the consolidation of two informations filed against the defendant. One information charged that the defendant, on June 24, 1985, at approximately 5:30 p.m., at the home of Jeffrey Scheuing in the town of South Windsor, had committed the crimes of criminal attempt to commit burglary in the third degree in violation of General Statutes § 53a-49 and 53a-103, criminal mischief in the third degree in violation of General Statutes § 53a-117, and threatening in violation of General Statutes § 53a-62 (the Scheuing incident). The second information accused the defendant of having committed, also on June 24, 1985, at approximately 9:30 p.m., at the home of Michael Duprey in the town of South Windsor, the crimes of burglary in the second degree in violation of General Statutes § 53a-102, criminal mischief in the third degree in violation of General Statutes § 53a-117, assault in the third degree in violation of General Statutes § 53a-61, and larceny in the fourth degree in violation of General Statutes § 53a-125 (the

Duprey incident). After a trial to a jury, the defendant was found guilty of all counts in both informations. In these appeals from the judgments of conviction, we find no error.

With respect to the charges arising from the Scheuing incident, the jury could reasonably have found the following facts.[1] At approximately 5:30 p.m., on June 24, 1985, Scheuing was in the kitchen of his home with his wife when he heard the sound of breaking glass emanating from the basement. Seeking the source of the broken glass, Scheuing went down to the basement and saw the defendant standing outside the door. The screen on the exterior door had been cut open, and the pane of glass nearest the doorknob on the interior door had been broken. Upon seeing Scheuing, the defendant fled the scene on a bicycle. Scheuing gave chase and caught up to the defendant at a nearby intersection when the defendant fell off the bicycle. The defendant threatened Scheuing, who, fearing the defendant was armed, initially backed away. When the defendant again attempted to flee on the bicycle, Scheuing attempted to restrain him. The defendant broke free of Scheuing's grasp and ran into some neighboring woods, leaving the bicycle. Having been summoned by a neighbor, the police arrived at Scheuing's home soon thereafter.

The jury could also reasonably have found the following facts regarding the Duprey incident. Later on the evening of June 24, at approximately 9:30 p.m., when Michael Duprey returned home from work, he noticed that, although no lights had been left on in his

---

[1] As is discussed in more detail, infra, the state presented evidence to the jury concerning these incidents in reverse chronological order; eliciting testimony first from Michael Duprey, and then from Jeffrey Scheuing. For our purposes, however, we will discuss the events of the evening of June 24, 1985, as they actually occurred.

home when he left for work, a light was burning in the family room. Duprey entered the garage attached to his house where he saw that a window had been broken and motor oil spilled on the floor. As Duprey approached the main body of the house, he heard movements in the upper floors. He searched the downstairs rooms and, approaching the base of the stairs, he turned on the light which illuminated the staircase. Standing at the top landing was a black male, wearing dark clothing and carrying a blue satchel. As Duprey started up the stairs, the intruder moved into one of the upstairs bedrooms. Duprey then went back downstairs, took a rifle from his gun cabinet, and returned to confront the intruder. At the same time, the defendant ran downstairs; the two met in the kitchen. When Duprey pointed the rifle at the defendant and ordered him to stop, the defendant swung the satchel, striking Duprey in the arm, and then fled through a sliding glass door in the basement.

Duprey called the police from a neighbor's house and, after returning home, discovered that a camera bag, an Olympus camera, a warm-up suit, a money purse and a twelve-speed bicycle, which together had an estimated value of $1070, had been taken from the house.

All of the items stolen from the Duprey residence, with the exception of the twelve-speed bicycle, were recovered later on the evening of June 24 by the Manchester police at a location about one mile from Duprey's home in South Windsor. Duprey was taken to this location by a South Windsor police officer, and there identified his belongings. Both Duprey and Scheuing were later shown a nine-photo array, from which they each selected a photograph of the defendant, identifying him as the man they had seen at their respective homes. In addition, both Duprey and Scheuing made positive identifications of the defendant at his subsequent trial.

At the time of his trial, the defendant had charges in five separate files pending against him. The defendant moved for separate trials on each file and the state moved to join all five informations in a single trial. After conducting a hearing on both motions, the court, *Brennan, J.,* granted the state's motion to join two of the informations for the trial, specifically the Duprey and Scheuing incidents, and severed the remaining files. The state excepted to the severance of the remaining files and the defendant excepted to the joinder of the Duprey and Scheuing files. The defendant now appeals.

The considerations governing the joinder of two or more criminal offenses are contained in General Statutes § 54-57[2] and elucidated in Practice Book §§ 828 and 829.[3] Our Supreme Court has recently analyzed the interplay of these provisions, in one instance finding error in the consolidation for trial of four informations pending against a defendant; *State* v. *Boscarino,* 204 Conn. 714, 529 A.2d 1260 (1987); and in a second instance finding no error in the joinder of two informations against a defendant. *State* v. *Pollitt,* 205 Conn. 61, 530 A.2d 155 (1987). A comparison of these decisions and a careful examination of the factors which

---

[2] "[General Statutes] Sec. 54-57. JOINDER OF OFFENSES OF THE SAME CHARACTER. Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise."

[3] Practice Book § 828 provides: "SEVERANCE OF OFFENSES. If it appears that a defendant is prejudiced by a joinder of offenses, the judicial authority may, upon his own motion or the motion of the defendant, order separate trials of the counts or provide whatever other relief justice may require."

Practice Book § 829 provides: "TRIAL TOGETHER OF INDICTMENTS OR INFORMATIONS. The judicial authority may, upon his own motion or the motion of any party, order that two or more indictments or informations or both, whether against the same defendant or different defendants, be tried together."

must be considered when deciding whether separate offenses ought to be consolidated for trial, lead us to conclude that the joinder in the present case was proper.

It is indisputable that the decision to join or sever offenses is submitted to the discretion of the trial court and may not be disturbed absent a manifest abuse of that discretion. *State* v. *Pollitt,* supra, 68; *State* v. *Boscarino,* supra, 721. On appeal, the defendant must demonstrate that the "denial of severance resulted in substantial injustice," and also that any resulting prejudice was "beyond the curative power of the court's instructions." *State* v. *King,* 187 Conn. 292, 302, 445 A.2d 901 (1982); see also *State* v. *Bell,* 188 Conn. 406, 410–11, 450 A.2d 356 (1982); *State* v. *Jonas,* 169 Conn. 566, 570, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 2d 331 (1976); *State* v. *Smith,* 10 Conn. App. 624, 629, 525 A.2d 116, cert. denied, 204 Conn. 809, 528 A.2d 1156 (1987).

The defendant here, as did the defendants in *Boscarino* and *Pollitt* before him, claims that the ability of the state to put evidence before the jury regarding the defendant's complicity in more than one criminal episode resulted in substantial injustice. Although it is a well settled rule of law that evidence of a defendant's involvement in prior crimes is not generally admissible as substantive evidence to prove his culpability for another; *State* v. *Jonas,* supra, 571; *State* v. *Holliday,* 159 Conn. 169, 172, 268 A.2d 368 (1970); the procedure allowing for the joinder of offenses, by necessity, avoids the application of this traditional prohibition. The consolidation of informations for trial, therefore, creates "an omnipresent risk . . . that 'although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jury] of the accused's guilt, the sum of it will convince them as to

all.' *United States* v. *Lotsch,* 102 F.2d 35, 36 (2d Cir.), cert. denied, 307 U.S. 622, 59 S. Ct. 793, 83 L. Ed. 1500 (1939)." *State* v. *Boscarino,* supra, 721–22.

The *Boscarino* court found that this risk, which "is greatly enhanced when the offenses joined are factually similar, but legally unrelated"; *State* v. *Boscarino,* supra, 722; could not be surmounted, given the facts and circumstances of that case. The factual similarities of the four crimes joined in *Boscarino,* although they were not similar enough to constitute "signature offenses,"[4] combined with the violent nature of the crimes and the duration and complexity of the trial, produced a substantial likelihood that the jury "would weigh the evidence against the defendant cumulatively, rather than independently in each case." Id., 723. Under those circumstances, not even the trial court's "apt and thorough admonitions could . . . mitigate the potential for prejudice wrought by the joinder . . . ." Id., 725.

By comparison, the *Pollitt* court found it unnecessary to delve into the considerations apparent in *Boscarino.* Relying on the precedents of *State* v. *Ibraimov,* 187 Conn. 348, 446 A.2d 382 (1982), and *State* v. *Howard,* 187 Conn. 681, 447 A.2d 1167 (1982), the court in *Pollitt* concluded that the circumstances of the two offenses joined "were sufficiently similar and distinctive to constitute 'signature offenses.' . . . Because the defendant was not substantially prejudiced by joinder of the

---

[4] The state conceded in *Boscarino* that the four assaults with which the defendant was charged could not be considered "signature crimes." See *State* v. *Carsetti,* 12 Conn. App. 375, 380–83, 530 A.2d 1095 (1987); C. McCormick, Evidence (3d Ed.) § 190, p. 560 ("[t]he pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature"). Similarly, evidence of the four offenses would not have been admissible in separate trials of each under the remaining exceptions to the prohibition of "other crimes" evidence, i.e. intent, identity, malice or motive. See *State* v. *Falby,* 187 Conn. 6, 23, 444 A.2d 213 (1982); *State* v. *Barlow,* 177 Conn. 391, 393, 418 A.2d 46 (1979).

offenses for a single trial . . . the trial court did not err in granting the state's motion for consolidation." (Footnote omitted.) *State* v. *Pollitt,* supra, 72.

With *Pollitt* and *Boscarino* marking either end of the spectrum, the facts of the present case cause it to fall somewhere between the two. As in *Boscarino,* the state has conceded that the burglary and the attempted burglary at issue here are not sufficiently similar to be signature crimes; therefore, the holding of *Pollitt* is not applicable. We do not find, however, that the underlying facts of this case engendered the potential for prejudice which was perceived to be of such magnitude as to require separate trials in *Boscarino.*

"Substantial prejudice does not necessarily result from a denial of severance even where evidence of one offense would not have been admissible at a separate trial involving the second offense. A trial court will not have manifestly abused its discretion in denying severance *if* the state's orderly presentation of evidence has prevented confusion of the jury and has enabled the jury to consider the evidence relevant to each charge separately and distinctly. See *Drew* v. *United States,* 331 F.2d 85, 89 (D.C. Cir. 1964); *State* v. *Bell,* [supra, 406]; *State* v. *King,* supra, 301." (Emphasis added.) *State* v. *Pollitt,* supra, 68; see also *United States* v. *Daniels,* 770 F.2d 1111 (D.C. Cir. 1985).

We do not believe that any of the factors which contributed to a finding of prejudice in *Boscarino* exist here. Although there are certainly factual similarities between the offenses charged; e.g., both involved burglaries in the same town within hours of one another by a black male dressed in dark clothing; these similarities were not so significant as to impair the defendant's right to the jury's fair and independent consideration of the evidence in each case.

This conclusion is further bolstered by the concise and orderly presentation of the state's evidence at trial.[5] The state first produced Michael Duprey who recounted his confrontation with the intruder, described the property which was taken from his home and identified the defendant as the thief. Jeffrey Scheuing next took the stand and testified to the facts concerning his encounter with the man who attempted to break into his home. Scheuing also identified the defendant as the individual he confronted. The state next produced Officer James Graham, a member of the Manchester police department, who, on the night of June 24, after being informed of the recent crimes committed in South Windsor, observed a man fitting the description of the suspect which had been dispatched over the police radio, near the South Windsor-Manchester town lines. Graham further testified that, when the suspect saw Graham in his cruiser, he dropped the bags he was carrying and fled into a wooded area. These bags were later found to contain the items taken from the Duprey home. Finally, Detective Francis Felber of the South Windsor police department described the investigation he conducted of the crimes reported by Duprey and Scheuing, which ultimately led to Felber's application for a warrant for the arrest of the defendant.

Throughout the examination of the witnesses, the state exhibited great care in keeping the two incidents

[5] The defendant claims that the state, by opting to offer evidence on the completed burglary at the Duprey home before presenting evidence of the attempted burglary at the Scheuing residence; the latter having occurred first in time; unduly confused the jury. We cannot agree. The state claims that it chose to present its case in reverse chronological order to minimize the likelihood that the jury would conclude that the defendant, having failed at the Scheuing home, "moved on to the Duprey residence to finish what he started." We do not find that the defendant was in any way prejudiced by the presentation of the evidence against him, given that the presentation was well organized and that, in its instructions to the jury, the trial court tailored its comments to conform to the evidence as adduced.

separate and, unlike *Boscarino,* the evidence presented was "simple, separable and straightforward." *State* v. *King,* supra, 302.[6] On the basis of these circumstances, we conclude that the defendant was not substantially prejudiced by the joinder of these two offenses.[7]

There is no error.

In this opinion the other judges concurred.

---

[6] The proceedings in the trial below lasted three days, there were four witnesses and ten exhibits introduced. The trial of the defendant in *Boscarino* lasted approximately ten weeks, there were fifty-five witnesses (some of whom gave testimony in more than one case) and there were sixty-six exhibits. These are differences of some importance.

[7] In his brief, the defendant claims that the trial court failed to instruct the jury that they were to keep the evidence presented in each case separate and that they were not to allow themselves to use evidence of one offense to influence their deliberations on the other. The state has responded, and correctly so, that the defendant neither requested such an instruction nor objected to the court's final instructions to the jury which lacked the admonition. We will not, therefore, grant the defendant a full review of this claim. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 583 (1973); see also *State* v. *Tyler-Barcomb,* 197 Conn. 666, 672, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986); *State* v. *Huff,* 10 Conn. App. 330, 337, 523 A.2d 906 (1987).

Due to the nature of the challenge discussed in the body of this opinion, however, we feel compelled to review the court's instructions to the jury in the context of the possibility of the jury becoming confused or misled. On the basis of a careful examination of the transcripts, we conclude that the trial court sufficiently distinguished the separate offenses and, although a specific cautionary instruction is doubtlessly preferable, there existed little or no likelihood that the jury impermissibly intermingled the evidence of the two offenses.