STATE OF CONNECTICUT *v.* MARIO SARACENO
(5289)

SPALLONE, BIELUCH and NORCOTT, Js.

Argued February 11—decision released July 19, 1988

*Joseph A. Hourihan,* with whom, on the brief, was *Leslie Sheppard,* for the appellant (defendant).

*Mitchell S. Brody,* deputy assistant state's attorney, with whom, on the brief, was *Timothy J. Liston,* for the appellee (state).

SPALLONE, J. The defendant appeals from the judgment of conviction, after a jury trial, of three counts of sexual assault in the second degree, General Statutes § 53a-71 (a) (1) and two counts of risk of injury to a minor, General Statutes § 53-21. We find error in part.

The defendant claims that the trial court erred (1) by failing to grant his motion to separate into individual counts each allegation of a criminal offense, (2) by failing to grant his motion to sever, (3) by failing to grant his repeated requests for a bill of particulars sufficiently specific to enable him to prepare his defense, (4) by failing to grant his motion to dismiss those counts which were beyond the statute of limitations, (5) in limiting his use of the victim's professionally prepared mental health records, (6) by admitting "constancy of accusation" testimony, (7) by allowing the victim to testify concerning the defendant's alleged touching of a third party, (8) by admitting into evidence statements of a rebuttal witness that she would not leave her children alone with the defendant, and (9) by failing to consider the defendant's motion for a new trial based on newly discovered evidence.

The following facts are relevant to this appeal. In February, 1985, the complainant, then a ten year old girl, reported having been sexually assaulted by the defendant numerous times over the previous five years. Later that month, a warrant issued for the arrest of the defendant and, in March, 1986, he was brought to trial, before a jury, on an eleven count information.[1]

---

[1] The final information, filed April 8, 1986, charged the defendant as follows:

### "[FIRST COUNT]

[T]hat at the Town of East Hampton, at 153 Main Street, on two weekends between approximately August 1980 and November 1980 at an uncertain time, the said MARIO SARACENO did attempt to compel another person, a female who was under fifteen years of age, to engage in sexual intercourse (vaginal intercourse) by the use of force against such person and the threat of the use of force against such person which did reasonably cause her to fear physical injury to herself; in violation of Sections 53a-49 (a) (2) and 53a-70 (a) of the Connecticut General Statutes.

### "SECOND COUNT

"And the Attorney aforesaid further accuses MARIO SARACENO of SEXUAL ASSAULT IN THE SECOND DEGREE and charges that at the Town of East Hampton, at 153 Main Street, on divers uncertain dates, primarily on weekends, between August 1980 and August 1983, during the daytime or evening in the absence of Carol Saraceno, the said MARIO SARACENO did engage in sexual intercourse (fellatio) with another person and such other person was a female under fifteen years of age; in violation of Section 53a-71 (a) (1) of the Connecticut General Statutes.

### "THIRD COUNT

"And the Attorney aforesaid further accuses MARIO SARACENO of SEXUAL ASSAULT IN THE SECOND DEGREE and charges that at the Town of East Hampton, at divers uncertain loctions while in a motor vehicle between August 1980 and August 1983 on divers uncertain days primarily on weekends during the daytime, the said MARIO SARACENO did engage in sexual intercourse (fellatio) with another person and such other person was a female under fifteen years of age; in violation of Section 53a-71 (a) (1) of the Connecticut General Statutes.

### "FOURTH COUNT

"And the Attorney aforesaid further accuses MARIO SARACENO of SEXUAL ASSAULT IN THE SECOND DEGREE and charges that at the Town of East Hampton, at divers locations while in a motor vehicle between approximately September 16, 1983 and September 26, 1983 (during the female's last stay at the Saraceno residence) during the daytime on approximately three occasions, the said MARIO SARACENO did engage

At trial, the victim testified that between August, 1980, and August, 1983, she was compelled by the defend-

in sexual intercourse (fellatio) with another person and such other person was a female under fifteen years of age; in violation of Section 53a-71 (a) (1) of the Connecticut General Statutes.

### "FIFTH COUNT

"And the Attorney aforesaid further acccuses MARIO SARACENO of RISK OF INJURY TO A MINOR and charges that at the Town of East Hampton, at the places and times set forth in the previous four counts, the said MARIO SARACENO did commit acts, including sexual contact and masturbation, likely to impair the health and morals of a female child under the age of sixteen years; in violation of Section 53-21 of the Connecticut General Statutes.

### "SIXTH COUNT

"And the Attorney aforesaid further accuses MARIO SARACENO of SEXUAL ASSAULT IN THE SECOND DEGREE and charges that at the Town of Cromwell, in the vicinity of the Connecticut River while parked in a motor vehicle during the summer of 1982, the said MARIO SARACENO did engage in sexual intercourse (fellatio) with another person and such other person was a female under fifteen years of age; in violation of Section 53a-71 (a) (1) of the Connecticut General Statutes.

### "SEVENTH COUNT

"And the Attorney aforesaid further accuses MARIO SARACENO of SEXUAL ASSAULT IN THE SECOND DEGREE and charges that at the Town of Cromwell, at the Roman Villa Restaurant on uncertain dates between November 1980 and May 1983 and approximately five occasions in the early afternoon hours and one occasion at approximately 4:00 a.m., the said MARIO SARACENO did engage in sexual intercourse (fellatio) with another person and such other person was a female under fifteen years of age; in violation of Section 53a-71 (a) (1) of the Connecticut General Statutes.

### "EIGHTH COUNT

"And the Attorney aforesaid further accuses MARIO SARACENO of SEXUAL ASSAULT IN THE SECOND DEGREE and charges that at the Town of Cromwell, at 7 West Street Heights on an uncertain date during the summer of 1982 during the daytime, the said MARIO SARACENO and another male did engage in sexual intercourse (fellatio) with another person and such other person was a female under fifteen years of age; in violation of Section 53a-71 (a) (1) of the Connecticut General Statutes.

### "NINTH COUNT

"And the Attorney aforesaid further accuses MARIO SARACENO of RISK OF INJURY TO A MINOR and charges that at the Town of Cromwell, at the locations and times set forth in the previous three counts, the

ant to engage in numerous acts of fellatio at the defendant's home in East Hampton, in a motor vehicle in various locations in East Hampton and in a motor vehicle near the banks of the Connecticut River in Cromwell. The jury returned with a verdict of guilty on the second, third, fifth, sixth and ninth counts. The defendant was acquitted of counts one, four, seven, eight, ten and eleven. These verdicts were accepted by the court on April 25, 1986. On June 9, 1986, the defendant filed a motion for a new trial, alleging the existence of newly discovered evidence. The motion was denied on June 12, 1986, and this appeal followed.

## I

In his initial claim of error, the defendant faults the trial court for failing to grant his motion to separate the information into individual counts reciting distinct and separate single crimes, rather than commission of a single criminal offense on multiple occasions. Counts

said MARIO SARACENO did commit acts, including sexual intercourse, sexual contact and masturbation, likely to impair the health and morals of a female child under sixteen years of age; in violation of Section 53-21 of the Connecticut General Statutes.

"TENTH COUNT

"And the Attorney aforesaid further accuses MARIO SARACENO of SEXUAL ASSAULT IN THE SECOND DEGREE and charges that at the Town of Portland, off Route 66, in the vicinity of Winchester Cafe in a motor vehicle on an uncertain date during the summer of 1982 during the daytime, the said MARIO SARACENO and another male did engage in sexual intercourse (fellatio) with another person and such other person was a female under fifteen years of age; in violation of Section 53a-71 (a) (1) of the Connecticut General Statutes.

"ELEVENTH COUNT

"And the Attorney aforesaid further accuses MARIO SARACENO of RISK OF INJURY TO A MINOR and charges that at the Town of Portland, off Route 66, in the vicinity of the Winchester Cafe in a motor vehicle on an uncertain date during the summer of 1982 during the daytime, the said MARIO SARACENO did commit acts, including sexual intercourse, likely to impair the health and morals of a female child under sixteen years of age; in violation of Section 53-21 of the Connecticut General Statutes."

one, two, three, four, six, seven, eight and ten of the information accused the defendant of having committed sexual assaults of the minor victim. The second and third counts, of which the defendant was convicted, as well as the first, fourth and seventh counts, of which the defendant was acquitted, each alleged commission of a single crime on multiple occasions. The defendant contends that this manner of charging prejudiced him because the second and third counts of the state's information were duplicitous.

"Duplicity occurs when two or more offenses are charged in a single count of the accusatory instrument." A. Spinella, Connecticut Criminal Procedure p. 406. There is no question but that the second and third counts each include allegations of the commission of more than one offense by the defendant, albeit multiple commissions of the same offense. The issue put to us in this appeal is what effect should be given to the convictions rendered on the allegedly duplicitous counts and the determination of whether remedial action is required by this court. Although we cannot truly claim that this issue is one of first impression in this state; see, e.g., *State* v. *Cook,* 75 Conn. 267, 268–69, 53 A. 589 (1902); *State* v. *Bosworth,* 54 Conn. 1, 2, 4 A. 243 (1866); we feel that the length of time which has passed since last this claim was considered requires us to take a fresh look at the doctrine. In reaching our conclusion that the defendant was not prejudiced by the manner in which the information was prepared, we turn to recent treatments of this issue under federal law, as well as to the policy considerations which provided the bases for the earlier decisions of our own Supreme Court.

It is now generally recognized that "[a] single count is not duplicitous merely because it contains several allegations that could have been stated as separate offenses. See *Cohen* v. *United States,* 378 F.2d 751 (9th

Cir.), cert. denied, 389 U.S. 897, 88 S. Ct. 217, 19 L. Ed. 2d 215 (1967). Rather, such a count is only duplicitous where the policy considerations underlying the doctrine are implicated. See *United States* v. *Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981), cert. denied, 461 U.S. 913, 103 S. Ct. 1891, 77 L. Ed. 2d 282 (1983)." *United States* v. *Sugar*, 606 F. Sup. 1134, 1146 (S.D.N.Y. 1985); see also *United States* v. *O'Neill*, 463 F. Sup. 1200, 1202–1204 (E.D. Pa. 1979), and cases cited therein. "These [considerations] include avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution. [*United States* v. *Murray*, 618 F.2d 892, 896 (2d Cir. 1980)]." *United States* v. *Margiotta*, supra.

Taking these considerations seriatim, and viewing the information, the court's instructions to the jury and the verdicts rendered indicate to us that the defendant's right to a fair trial was not abridged. First, because the offenses charged here are exactly the same, there is no danger that the jury might by its return of a general verdict to an entire count, conceal a finding of not guilty as to one crime. Each count, although alleging repeated commissions of a crime, charged only a single set of essential elements comprising the offense. Because each offense contained the same elements,[2]

---

[2] The essential elements of the offense charged, in addition, are limited in number. To be convicted of sexual assault in the second degree, pursuant to General Statutes (Rev. to 1979) § 53a-71 (a), an accused must have engaged in (1) sexual intercourse (2) with another person and (3) such other person is under fifteen years of age. Taking into consideration the fact that at all relevant times, the complainant was under the age of fifteen, the only disputed element was whether the defendant did in fact engage in sexual intercourse, here, fellatio, with her.

it would be impossible in this case for the jury to have selected elements from different criminal episodes to arrive at an unlawful verdict. Furthermore, the jury was specifically instructed that although "more than one occasion or diverse dates" were alleged, it had to find one completed violation of the statute alleged in that count. We conclude that the danger of a concealed not guilty verdict is largely nonexistent in a case, such as this, where only a single statutory offense is charged in one count. See *United States* v. *Shorter*, 608 F. Sup. 871, 879–80 (D.D.C. 1985).

The second consideration of fairness concerns the possible lack of unanimity of the jury under the information and the evidence. While we are ever mindful that "the defendant is entitled to be protected against the danger that . . . he will be convicted not on the basis of one unanimous verdict on a single set of facts but under juror votes of conviction which, depending on the particular member of the jury, relate to entirely different [occasions]"; id., 881; we find that with regard to the evidence adduced in this case, it was not possible for the jury to return a verdict which was not unanimous. Given the complainant's age and her relative inability to recall with specificity the details of separate assaults, the jury was not presented with the type of detail laden evidence which would engender differences of opinion on fragments of her testimony. In other words, the bulk of the state's case rested on the credibility of the young complainant. When she testified, for example, that on many occasions the defendant forced her to engage in fellatio while in a motor vehicle parked on the banks of the Connecticut River, the jury was left, primarily, only with the decision of whether she should be believed. With such general testimony, the spectre of lack of unanimity cannot arise. Furthermore, an examination of the court's charge reveals that the jury was adequately warned that it was

required to render a unanimous verdict on at least a single violation of the statute alleged in each count in order to convict the defendant. Under the specific circumstances of this case, therefore, we conclude that the defendant was not prejudiced by the potential lack of jury unanimity.

We also conclude that the defendant was furnished with adequate notice of the charges against him, which satisfies the third fairness consideration. Here, the defendant was accused in each pertinent count with committing a specific act on a victim of a specific class on multiple occasions. "Unlike someone who is charged in a single [information] with violation of what may appear to be several overlapping laws, only a single statute is here involved." *United States* v. *Shorter,* supra, 880. We do not see how, if each violation contained in a count was listed separately, the defendant would have had "more precise or ample notice of the charges against him than he has under the present [information]." Id.

Once again, the fact that the counts charge multiple commissions of the same offense mitigates any problems with regard to the sentencing of the defendant, which is the focus of the fourth consideration. Whereas it might be difficult for a trial court to decide on a fair sentence when the defendant has been convicted on a single count containing disparate charges arising under different statutes, no such difficulty exists when each count concerns only one statute which carries with it a specific punishment. In fact, if anything, the defendant is benefitted by the obvious reduction in the maximum penalties he would otherwise face if each offense had been alleged separately. *United States* v. *Sugar,* supra. The three counts of which the defendant was convicted are all class C felonies, each punishable by a term of imprisonment of ten years. Had the defendant's motion for separation of offenses been granted,

he would have been exposed to an additional ten year penalty for each new count that resulted.[3]

Finally, with regard to the fifth consideration, there is no possibility that the court's denial of the motion to separate the information threatens the defendant with double jeopardy. Each of the information's eleven counts sufficiently delineated the crimes charged and the time frame within which the defendant was accused of committing those crimes. See *Serfass* v. *United States,* 420 U.S. 377, 388–89, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975). The state cannot raise the same charges again within those designated parameters of time. We conclude, therefore, that the trial court did not err in its denial of the defendant's motion to separate.

## II

In his second claim, the defendant challenges the trial court's denial of his motion to sever and its refusal to order separate trials for each of the counts charged.

"It is indisputable that the decision to join or sever offenses is submitted to the discretion of the trial court and may not be disturbed absent a manifest abuse of that discretion. *State* v. *Pollitt,* [205 Conn. 61, 68, 530 A.2d 155 (1987)]; *State* v. *Boscarino,* [204 Conn. 714, 721, 529 A.2d 1260 (1987)]. On appeal, the defendant must demonstrate that the 'denial of severance resulted in substantial injustice,' and also that any resulting prejudice was 'beyond the curative power of the court's instructions.' *State* v. *King,* 187 Conn. 292, 302, 445 A.2d 901 (1982); see also *State* v. *Bell,* 188 Conn. 406, 410–11, 450 A.2d 356 (1982); *State* v. *Jonas,* 169 Conn.

---

[3] In fact, we believe this increased capability for punishment explains why this claim is rarely litigated: the state will normally attempt to charge an accused separately with as many crimes as he can be said to have committed, resulting in enhanced sentences, and a defendant will not normally claim error in the state's failure to do so, not wanting to run the risk of facing such an enhanced sentence.

566, 570, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 2d 331 (1976); *State* v. *Smith,* 10 Conn. App. 624, 629, 525 A.2d 116, cert. denied, 204 Conn. 809, 528 A.2d 1156 (1987)." *State* v. *Perry,* 14 Conn. App. 526, 531, 541 A.2d 1245 (1988).

The defendant first argues that a pretrial incident concerning a juror provides the basis for his claim that he was substantially prejudiced by the joinder of eleven counts. The day after she had been accepted as a member of the defendant's jury, one venirewoman recanted some of the answers she had given in the voir dire the day before. This woman returned to the courtroom to explain that, after having given it more thought overnight, she now believed that the fact that the defendant was charged with eleven different offenses prejudiced her against him. After a thorough questioning by both attorneys and by the court, this venirewoman was excused. The court, satisfied that the venirewoman had not yet discussed her concerns with other potential jurors, released her with the admonition that she not talk to anyone when she returned to the jury room to collect her things.

The short answer to the defendant's claim that this incident proved that he would be prejudiced by a single trial on eleven counts is that this incident instead indicates that the voir dire system served its purpose in excluding at least one individual who could not be impartial. To expand this occurrence into a claim that *no* juror would be impartial under these circumstances is speculative and indeed would lead to the absurd conclusion that it would have been impossible for an impartial jury to be impaneled.

The defendant also claims, almost offhandedly, that jury confusion resulted from the complainant's failure to testify about the alleged assaults in a sequential order. We are not persuaded by this claim. The testi-

mony elicited from the complainant conformed to the information with regard to the different locations where the assaults occurred and the timeframes in which they were alleged to have been committed. We do not agree that the possibility for jury confusion existed in this case. See *State* v. *Boscarino,* supra; *State* v. *Perry,* supra. Furthermore, the fact that the jury acquitted the defendant of six of the counts substantiates our belief that the jury was capable of deciding each count independently. See *State* v. *Banta,* 15 Conn. App. 161, 166–68, 544 A.2d 1226 (1988); *State* v. *Iovieno,* 14 Conn. App. 710, 722, 543 A.2d 766 (1988).

In addition, there are other factors which substantiate the court's refusal to sever these counts. First is the financial and psychological impact and the lack of repose or sense of finality that the defendant would experience if, after a trial on each count, whether convicted or acquitted, he faced additional trials. Second, considerations of judicial economy and the husbanding of the state's limited resources weight the scale in favor of one trial on an eleven count information rather than eleven trials on single count informations. "Economy and expedition of judicial resources are not achieved when the same facts must be proved to [many] different juries." *State* v. *Schroff,* 198 Conn. 405, 409, 503 A.2d 167 (1986), quoted in *State* v. *Smith,* supra, 630.

### III

The defendant also avers error in the trial court's denial of his motion for a further bill of particulars. On April 15, 1985, the defendant filed a motion for a bill of particulars in order to determine the "date, time and place" of the alleged offenses. The court ordered the state to attempt to identify the time of the day and the year that each crime was committed. In addition, the court ordered the state to distinguish between weekdays and weekends. The state responded by filing a sub-

stitute information which comported, to the best of the state's ability, with the instructions of the court. Thereupon, the defendant filed a motion for a further bill of particulars asking for greater specificity as to the time, date and place of the crimes. The trial court denied this motion.

The defendant maintains that the court's denial of his second motion for a bill of particulars requesting more specific information hindered his ability to maintain an adequate defense, particularly an alibi defense.

We recognize that Practice Book § 832 provides that "a bill of particulars disclose information sufficient to enable the defendant to prepare his defense, including but not being limited to reasonable notice of the crime charged and the date, time, and place of its commission." Clearly, " 'the function of the bill of particulars under Connecticut practice is to enable the defendant to obtain a more precise statement of the offense charged in the information in order to prepare a defense.' " *State* v. *Stepney,* 191 Conn. 233, 240, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984), quoting *State* v. *Troynack,* 174 Conn. 89, 96, 384 A.2d 326 (1977).

" ' "A motion for a bill of particulars is addressed to the sound discretion of the trial court. *United States* v. *Gray,* 464 F.2d 632, 635 (8th Cir. [1972]); *Wong Tai* v. *United States,* 273 U.S. 77, 80–81, 47 S. Ct. 300, 71 L. Ed. 545 [1927]; *State* v. *Beaulieu,* 164 Conn. 620, 624, 325 A.2d 263 [1973]; *State* v. *DiBella,* 157 Conn. 330, 339, 254 A.2d 477 [1968] . . . . [A]n abuse of discretion in the denial of a motion for a bill of particulars can be premised only upon a clear and specific showing of prejudice to the defense; *State* v. *Curtis,* [146 Conn. 365, 368, 151 A.2d 336 (1959)]; see *United States* v. *Addonizio,* 451 F.2d 49, 64 (3d Cir.) [cert. denied, 405 U.S. 936, 92 S. Ct. 949, 30 L. Ed. 2d 812,

reh. denied, 405 U.S. 1048, 92 S. Ct. 1309, 31 L. Ed. 2d 591 (1972)]." *State* v. *Hauck,* 172 Conn. 140, 151, 374 A.2d 150 [1976]. The defendant has the burden of showing why the additional particulars were necessary to the preparation of his defense. *State* v. *DiBella,* [supra]; *State* v. *Curtis,* 146 Conn. 365, 367, 151 A.2d 336 [1959].' *State* v. *Brown,* 173 Conn. 254, 257, 377 A.2d 268 (1977)." *State* v. *Stepney,* supra, 241; see *State* v. *Laracuente,* 205 Conn. 515, 518–21, 534 A.2d 882 (1987).

The general rule in Connecticut is that "[t]ime is not an essential ingredient of the crime of [sexual assault]." *State* v. *Horton,* 132 Conn. 276, 277, 43 A.2d 744 (1945). In derogation of this rule, the defendant argues that the dates of the alleged crimes are material to his defense. "Since the state has not pinpointed the date[s] that the offenses allegedly occurred the defendant claims that his alibi defense is prejudiced. There is no claim, nor is there any evidence that the state knows the precise date of the alleged offenses and is deliberately withholding it from the defendant. We recognize that '[t]he state has a duty to inform a defendant, within reasonable limits of the time when the offense charged was alleged to have been committed. The state does not have a duty, however, to disclose information which the state does not have. Neither the sixth amendment of the United States constitution nor article first, § 8, of the Connecticut constitution requires that the state choose a particular moment as the time of an offense when the best information available to the state is imprecise. If [there was evidence that] the state had known to a reasonable certainty that the [sexual offenses were] committed within a narrower time frame than that provided in the bill of particulars, then the defendant's claim . . . would be more convincing.' *State* v. *Stepney,* [supra, 242]." *State* v. *Evans,* 205 Conn. 528, 535–36, 534 A.2d 1159 (1987).

As did our Supreme Court in *State* v. *Evans,* supra, 536, we "recognize that because the state has been unable to be more precise the defendant's presentation of his alibi defense may be more burdensome and difficult." We also recognize, however, that in a case involving the sexual abuse of a very young child, that child's capacity to recall specifics, and the state's concomitant ability to provide exactitude in an information, are very limited. The state can only provide what it has. This court will not impose a degree of certitude as to date, time and place that will render prosecutions of those who sexually abuse children impossible. To do so would have us establish, by judicial fiat, a class of crimes committable with impunity.

We conclude, as have other jurisdictions considering the issue, that as long as the information provides a time frame which has a distinct beginning and an equally clear end, within which the crimes are alleged to have been committed, it is sufficiently definite to satisfy the requirements of the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. See, e.g., *United States* v. *Roman,* 728 F.2d 846, 851 (7th Cir.), cert. denied, 466 U.S. 977, 104 S. Ct. 2360, 80 L. Ed. 2d 832 (1984) (crimes committed over eleven year period); *United States* v. *McCown,* 711 F.2d 1441, 1450 (9th Cir. 1983) (crimes committed over five month period); *People* v. *Baugh,* 145 Ill. App. 3d 133, 495 N.E.2d 688 (1986) (crimes committed over nine month period).

Taking into account the facts and circumstance of this case, particularly the continuing nature of the offenses charged and the tender age of the victim, we cannot say that the trial court abused its discretion in denying the defendant's motion for a further bill of particulars.

## IV

The defendant's fourth claim is that the second and third counts should have been dismissed as being brought beyond the statute of limitations.

The original warrant for the defendant's arrest, issued on February 25, 1985, charged him with committing the offenses of sexual assault in the first degree, risk of injury to a minor, unlawful restraint in the first degree and reckless endangerment in the second degree, which crimes allegedly occurred during a period beginning in 1981 and ending in the summer of 1984. On April 4, 1985, the state filed a substitute information which charged the defendant in the first, fourth and fifth counts, with the crime of sexual assault in the first degree committed at various locations, between the years of 1981 and 1984, with "another person . . . under fifteen years of age." On August 26, 1985, the state filed a second substitute information, adding the charge of sexual assault in the second degree against "another person . . . under fifteen years of age," comprising counts two and three and covering a time period from August, 1980, to September, 1983. These two counts were retained as the second and third counts of the state's final substitute information, filed during the trial. The time frame, however, was altered to encompass the period of time between "August of 1980 and August of 1983."

The defendant argues that because the final substitute information recited crimes which allegedly commenced in August, 1980, which charges were not brought against him until the August 26, 1985 information was filed, the second and third counts should have been dismissed as falling outside of the statute of limitations. We disagree.

Although General Statutes § 54-193 (b) provides that "[n]o person may be prosecuted for any offense . . . for which punishment is or may be imprisonment in excess of one year, except within five years next after the offense has been committed," our Supreme Court has held that the issuance of an arrest warrant tolls the running of the statute of limitations for a crime charged. *State* v. *Crawford,* 202 Conn. 443, 447, 521 A.2d 1034 (1987). Clearly, then, under *Crawford,* the original arrest warrant and the first substitute information served to toll the statute of limitations for the crime alleged therein, which was sexual assault in the first degree, occurring between August, 1980, and August, 1983. *Crawford* cannot provide us with the complete answer, however. The issue now presented to us is one step removed from *Crawford,* namely whether the arrest warrant and the first substitute information tolled the statute of limitations for a prosecution of sexual assault in the second degree, which offense was not charged until the filing of the substitute information on August 26, 1985.

Although we can find no Connecticut case to guide us, we are again persuaded by the treatment of this issue by other courts, which have concluded that an original information can, under certain circumstances, toll the statute of limitations for a separate and distinct offense alleged for the first time in a superseding information.

Because "[s]tatutes of limitations are intended to ensure, inter alia, that a defendant receives notice, within a prescribed time, of the acts with which he is charged, so that he and his lawyers can assemble the relevant evidence before documents are lost, memory fades, etc."; *United States* v. *O'Neill,* 463 F. Sup. 1205, 1208 (E.D. Pa. 1979); the focal point of a court's scrutiny on such a claim as this is a determination of whether the superseding information "broaden[s] or

substantially amend[s] the charges made in the first [information]." *United States* v. *Grady,* 544 F.2d 598, 602 (2d Cir. 1976). In other words, " 'if the defendant was [charged] within time, then approximately the same facts may be used for the basis of [a superseding information] . . . .' " *United States* v. *Charnay,* 537 F.2d 341, 354 (9th Cir.), cert. denied, 429 U.S. 1000, 97 S. Ct. 528, 50 L. Ed. 2d 610 (1976), quoting *Mende* v. *United States,* 282 F.2d 881, 883–84 (9th Cir. 1960), cert. denied, 364 U.S. 933, 81 S. Ct. 379, 5 L. Ed. 2d 365 (1961).

In this case, the definitive elements, sexual intercourse—here, fellatio—with a minor— here, "a female under fifteen years of age"—were included in the first, fourth and fifth counts of the state's April 4, 1985 information, which alleged the commission of sexual assault in the first degree. These same key elements of the second and third counts of the state's final information, sexual intercourse with a minor, were also set forth in the charges contained in the short form information accompanying the February 22, 1985 arrest warrant.

Therefore, applying the principles enunciated in *State* v. *Crawford,* supra, and the rationale of *O'Neill* and *Charnay,* we conclude that the trial court did not err in refusing to dismiss the second and third counts of the state's final information as being time-barred.

## V

The defendant contends, in his fifth claim, that the trial court erred when it limited his use of the complainant's mental health records to cross-examination of the complainant. He argues that, in order effectively to challenge the credibility of the complainant, he should have been permitted to examine the health care professionals who prepared the reports.

The defendant moved for an in camera inspection by the trial court of certain school, medical and psychological records of the complainant. The trial court, after a duly held hearing, found that the defendant had made a threshold showing that the victim "had a mental problem which affected her testimonial capacity . . . ." *State* v. *Esposito*, 192 Conn. 166, 180, 471 A.2d 949 (1984). Following the procedures set forth in *Esposito*, the court conducted an in camera review of the records held by the Cromwell school system, the department of children and youth services (DCYS), the Middlesex Memorial Hospital, the Middlesex Mental Health Clinic and the Associated Psychotherapists of Cromwell. The court, finding these records to be relevant, ordered released to the defendant those of the Cromwell school system, DCYS and the Middlesex Memorial Hospital. The court, deeming the mental health clinic and the psychotherapy records to be privileged pursuant to General Statutes § 52-146e,[4] appointed a guardian ad litem for the complainant. The guardian ad litem consented to the release of the mental health records of her ward

[4] "[General Statutes] Sec. 52-146e. DISCLOSURE OF COMMUNICATIONS. (a) All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative.

"(b) Any consent given to waive the confidentiality shall specify to what person or agency the information is to be disclosed and to what use it will be put. Each patient shall be informed that his refusal to grant consent will not jeopardize his right to obtain present or future treatment except where disclosure of the communications and records is necessary for the treatment.

"(c) The patient or his authorized representative may withdraw any consent given under the provisions of this section at any time in a writing addressed to the person or office in which the original consent was filed. Withdrawal of consent shall not affect communications or records disclosed prior to notice of the withdrawal."

to the defendant, with the understanding that their use would be limited to the cross-examination of the complainant.

The defendant, however, sought to use the mental health records to examine and cross-examine witnesses other than the complainant. The trial court rejected the defendant's request, citing *Esposito* as limiting the use of the complainant's records to cross-examination of the complainant only.

As defense counsel conceded at oral argument, the trial court meticulously adhered to the procedures established by our Supreme Court in *Esposito* and in the subsequent case of *State* v. *Bruno,* 197 Conn. 326, 329–32, 497 A.2d 758 (1985), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986), when it released the mental health records of the complainant to the defendant. The court's limitation on the use of such records solely to the cross-examination of the complainant, however, runs counter to our Supreme Court's more recent holding in *State* v. *Pierson,* 201 Conn. 211, 514 A.2d 724 (1986), where the rules established in *Esposito* and *Bruno* were expressly modified.

"Where there is any reasonable basis in the evidence for believing that psychiatric personnel may have information relating to the mental condition of a witness that might affect his testimony, the court must conduct a voir dire of the person who may possess such information in order to discover whether it would be admissible. This preliminary inquiry may be conducted only with the consent of the witness sought to be impeached, but, unless such consent is forthcoming, the testimony of the witness must be stricken. The voir dire for the purpose of determining the existence of such impeaching evidence must be conducted in the courtroom in the presence of the defendant and his counsel, who shall be allowed to participate fully in the

proceeding. . . . If, after conducting such voir dire, the court decides that some of the evidence elicited is admissible at trial, the defendant shall be permitted to use it, but the remaining confidential communications shall be sealed." *State* v. *Pierson,* supra, 228.

Obviously, the Supreme Court in *Pierson* expanded the procedures outlined in *Esposito* and *Bruno* to allow the use of the mental health records of a witness not only for the purposes of cross-examining the witness, but also for the purpose of impeaching the witness through the examination and cross-examination of such mental health professionals who *"may have information relating to the mental condition of a witness that might affect his testimony . . . ."* (Emphasis added.) *State* v. *Pierson,* supra.

In this case, the trial court, pursuant to *Esposito,* found that the mental health records did contain information relevant to the testimonial capacity of the witness and ordered the records released, in total, to the defendant. By its finding, the trial court must have determined that the records contained relevant material bearing on the credibility of the witness, otherwise it would have been precluded from releasing the records.

Having made the determination that the records contained information which implicated the witness' credibility, the next step, under *Pierson,* requires that the court conduct a voir dire of such health care professionals who may have knowledge bearing on the testimonial capacity of the witness.

The state argues that the defendant should have proffered the testimony of a specific or particular health care professional whose testimony, if precluded, would have served to provide a record sufficient for our review. *State* v. *Conrod,* 198 Conn. 592, 597, 504 A.2d 494 (1986). We are not persuaded by this argument.

The trial court determined that the complainant's entire mental health record was available to the defendant. Those records are part of the court file and are available to us for our review. We agree with the trial court that the pertinent records call into question the testimonial capacity of the witness. We also agree that, in limiting the use of said records to the cross-examination of the complainant, the trial court correctly conformed to the dictates of *Esposito*.

The modification of *Esposito* by *State* v. *Pierson*, supra, however, now provides for a procedure calculated to test the admissibility of the testimony of the health care professionals who participated in formulating the witness' health records. Where, as in this case, the mental health records have been determined by the trial court to be relevant to the witness' testimonial capacity, it logically and reasonably follows that the preparers of those records may have information other than that which appears in the mental health records relating to the mental condition of the witness that may affect the witness' testimony; on the other hand, they may not. Thus, the proviso in *Pierson* for a voir dire of any such witness is a proper way to determine the existence or nonexistence of such evidence. We hold that, because the mental health records of the complainant were deemed to call into question her testimonial capacity, the defense should have been allowed the opportunity, by the voir dire process, to determine if the authors of the mental health reports have any other knowledge which would implicate such testimonial capacity of the complainant. If, as a result of the voir dire, the witness can add nothing to the report, the testimony elicited goes no further; but, if relevant testimony is elicited upon voir dire, the defendant should be allowed to put such testimony to the jury for impeachment purposes.

In reaching this holding, we conclude that *Pierson* should be given retroactive application. *State* v. *Esposito,* supra, was decided in February, 1984. The defendant in this case was tried early in 1986 and sentenced on June 12, 1986. *State* v. *Pierson,* supra, was released on August 26, 1986. It is uncontested that the trial court correctly applied *Esposito,* the prevailing law, at the time of the defendant's trial. It is also apparent that the trial court's rulings do not conform to *Pierson.* We have determined that the interests of justice and a fair trial for the defendant demand our retroactive application of *Pierson* to this case.

" 'The sixth amendment to the constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is secured to defendants in both state and federal prosecutions. *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). The primary interest secured by confrontation is the right to cross-examination. *Douglas* v. *Alabama,* 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965). . . . To comport with the constitutional standards embodied in the confrontation clause the defendant in exercising his right of cross-examination must be allowed to "expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis* v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).' *State* v. *Wilson,* 188 Conn. 715, 720, 453 A.2d 765 (1982); see also *State* v. *Ortiz,* 198 Conn. 220, 223–25, 502 A.2d 400 (1985); *State* v. *Milum,* 197 Conn. 602, 608, 500 A.2d 555 (1985)." *In re Marcel L.,* 14 Conn. App. 548, 550–51, 542 A.2d 340 (1988).

Because the right of cross-examination is a fundamental constitutional right that goes to the fairness of the defendant's trial, we hold that *Pierson* must be applied retroactively to this case. The right to exam-

ine and cross-examine witnesses is not a right that accrued to the defendant subsequent to his trial. At all times before, during and since the trial, the defendant was entitled to confront the witnesses against him in any criminal proceedings. Whereas *Esposito* recognized that right in the area of a witness' mental health history, *Pierson* recognized the same right concerning the mental health professionals who were familiar with that history. Neither case created the constitutional right of confrontation, but each recognized and provided procedures for its implementation. The law is plain that only where there is a "clear break with the past" involving a new constitutional decision should a court consider a new rule as nonretroactive. See, e.g., *Solem* v. *Stumes,* 465 U.S. 638, 643–45, 104 S. Ct. 1338, 79 L. Ed. 2d 579 (1984); *Reed* v. *Reincke,* 155 Conn. 591, 600–601, 236 A.2d 909 (1967); *State* v. *Payton,* 8 Conn. App. 345, 350, 512 A.2d 976 (1986). Although these cases refer to rights cognizable under the fourth amendment to the United States constitution, the principles of retroactive application apply equally to the sixth amendment, which is implicated here. Consequently, we must return this case to the trial court for the purpose of conducting a voir dire of those mental health professionals who prepared the mental health records of the complainant. The court should determine, by such voir dire, whether these witnesses possess any information about the mental condition of the complainant that would have been admissible to impeach her testimony. In the event the complainant refuses to consent to waive her statutory privilege for the purpose of such an inquiry, her testimony at the trial must be wholly stricken and, because she was the only witness to the crimes, the trial court is directed to render a judgment of acquittal.[5] If the complainant does waive the privi-

---

[5] Although there were other witnesses who testified in this case under the doctrine of constancy of accusation, see part VII, infra, their testimony

lege for this purpose and the court finds significant evidence that would be admissible for impeachment, the judgment of conviction is set aside and a new trial is ordered. On the other hand, if no such evidence is discovered, the judgment of conviction must remain undisturbed. *State* v. *Pierson,* supra, 228–29; see also *In re Robert H.,* 199 Conn. 693, 710–11, 509 A.2d 475 (1986).

## VI

In his sixth claim of error, the defendant challenges the trial court's admission into evidence of the testimony of various "constancy of accusation" witnesses.[6] The defendant does not claim that this evidence was not relevant or permissible under Connecticut law, but rather asserts that he was unfairly prejudiced by the testimony under the facts of this case because of the span of time which passed between the defendant's alleged assaults and the day the complainant first confided in another that she had been molested.[7] The

---

is admissible "only when the complainant has testified." *State* v. *Brice,* 186 Conn. 449, 454, 442 A.2d 906 (1982); *State* v. *Segerberg,* 131 Conn. 546, 549, 41 A.2d 101 (1945).

[6] In essence, the constancy of accusation doctrine allows a complainant in a sexual offense case to testify that he or she informed others of the attack. These other individuals are then allowed to testify concerning the complaint made by the victim and are permitted to relate the details of the attack as the victim narrated. See generally 2 B. Holden & J. Daly, Connecticut Evidence §§ 93g (2), 98e; C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 11.22. This doctrine has been alternatively defined as an exception to the hearsay rule, and the testimony is therefore admissible as substantive evidence of the defendant's guilt, or as evidence simply corroborative of the victim's testimony and therefore relevant only to the credibility of the victim. See *State* v. *Daley,* 11 Conn. App. 236, 237–38 and n.1, 526 A.2d 560 (1987); C. Tait & J. LaPlante, supra. The resolution of these inconsistent definitions has no impact on the outcome of this appeal, and therefore, we decline to entertain this question.

[7] The total span of time from the defendant's first alleged assault of the victim until the victim first complained is four years: August, 1980, to August, 1984. On the other hand, the last alleged assault of the complainant was charged as occurring in September, 1983, making the period of time she remained silent less than one year.

defendant urges us to modify the constancy of accusation exception to include a requirement that the victim's statement must be made "close in time" to the alleged incident. We decline to do so.

"It has long been the established law of this state that delay of this nature does not affect the admissibility of the evidence, but merely presents a question for the trial court as to the weight to be given it. *State* v. *DeWolf,* 8 Conn. 93, 100 [1830]; *State* v. *Byrne,* 47 Conn. 465, 466 [1880]; *State* v. *Sebastian,* 81 Conn. 1, 6, 69 A. 1054 [1908]." *State* v. *Dziob,* 133 Conn. 167, 169, 48 A.2d 377 (1946). This axiom has been recently reaffirmed by our Supreme Court in *State* v. *Brigandi,* 186 Conn. 521, 529, 442 A.2d 927 (1982), and a challenge to the usefulness and continued viability of the constancy of accusation doctrine as a whole was also recently rejected by that court. *State* v. *Dabkowski,* 199 Conn. 193, 203, 506 A.2d 118 (1986). Even if we were to find that we were empowered to effect the modification the defendant requests, he has provided us with no valid reason to do so.

## VII

The seventh and eighth claims of error presented by the defendant involve evidentiary rulings of the trial court. The defendant avers that the court should have excluded (1) testimony concerning the alleged touching of another minor by the defendant, and (2) testimony of a rebuttal witness, to the effect that she would not feel comfortable leaving her children alone with the defendant, on the grounds that in each of these instances the probative value of this testimony was outweighed by its prejudicial effect.[8]

---

[8] Although the defendant's seventh and eighth claims are briefed in rather sweeping terms, the defendant does not appear to be challenging the trial court's rulings on the relevancy of the testimony of these two witnesses. If in fact he is, we find the claims meritless. As for the testimony concern-

The following situations suggest the exclusion of otherwise relevant evidence due to the potential for its prejudicial effect: "(1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it. McCormick, Evidence (2d Ed.) § 185, pp. 439–40." *State* v. *DeMatteo,* 186 Conn. 696, 702–703, 443 A.2d 915 (1982). Because of the inherent difficulties in weighing these considerations against the need for relevant evidence, the resolution of this determination has been traditionally entrusted to the trial court. See *State* v. *Tucker,* 181 Conn. 406, 416, 435 A.2d 986 (1980). "Every reasonable presumption must be given in favor of the correctness of the court's ruling, and reversal will ensue only where an abuse of discretion is mani-

---

ing the defendant's claimed touching of a third party, that third party appeared as a constancy of accusation witness on behalf of the complainant. The trial court ruled that a limited amount of information regarding the uncharged touching incident was necessary for introduction of the testimony as constancy evidence under *State* v. *Ouellette,* 190 Conn. 84, 98–99, 459 A.2d 1005 (1983), specifically, that the "accusation was made at a time when it was natural to make it." The trial court took great care in properly cautioning the jury on the permissible uses of this testimony; see *State* v. *Dabkowski,* 199 Conn. 193, 197 n.4, 506 A.2d 118 (1986); and we do not find any error in its decision to allow it. Regarding the claim that the state should not have been allowed to ask a witness whether she would leave her children in the defendant's care, the defendant himself paved the way for this testimony by producing two witnesses in his case-in-chief who testified that they would not hesitate in leaving their children alone with the defendant. After opening the door on this issue and placing his character in evidence, the defendant cannot be now heard to decry the state's desire to produce rebuttal testimony. See *State* v. *Zdanis,* 173 Conn. 189, 194, 377 A.2d 275 (1977); *State* v. *Martin,* 170 Conn. 161, 163, 365 A.2d 104 (1976).

fest or where injustice appears to have been done. *State v. Barlow,* 177 Conn. 391, 394, 418 A.2d 46 (1979)." *State v. Devanney,* 12 Conn. App. 288, 292, 530 A.2d 650 (1987).

The defendant offers us nothing in his brief addressing these considerations, relying instead on the bare assertion that the challenged testimony was prejudicial to his cause. Contrary to the defendant's belief, he is not entitled to have evidence excluded at trial simply because it casts him in an unfavorable light. As it was sagaciously phrased in *State v. DeMatteo,* supra, 703: "Prejudice is not measured by the significance of the evidence which is relevant but by the impact of that which is extraneous."

## VIII

The defendant's final claim is that the trial court erred in denying his motion for a new trial. We will not review this claim due to the defendant's failure to conform to the rules of practice.

For a defendant to obtain a new trial on the ground of newly discovered evidence, as was sought here,[9] he must bring a petition under Practice Book § 904.[10] *State*

[9] The document filed by the defendant on June 9, 1986, was entitled "Motion for New Trial Based on Newly Discovered Evidence," and requested "pursuant to Practice Book § 904 . . . a New Trial on the basis of newly discovered evidence." The caption of "Motion for New Trial" cannot be dispositive of the true nature of the documents.

[10] Practice Book § 904 provides: "A request for a new trial on the ground of newly discovered evidence shall be called a petition for a new trial and shall be brought in accordance with Gen. Stat., § 52-270. The judicial authority may grant the petition even though an appeal is pending."

General Statutes § 52-270 provides in pertinent part: "(a) The superior court may grant a new trial of any action that may come before it, for mispleading, the discovery of new evidence or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed, or the want of actual notice to any plaintiff of the entry of a nonsuit for failure to appear at trial or dismissal for failure to prosecute with reasonable diligence, or for other reasonable

v. *Jones,* 205 Conn. 723, 728–30, 535 A.2d 808 (1988). "A petition for a new trial is properly 'instituted by a writ and complaint served on the adverse party; although such an action is collateral to the action in which the new trial is sought, it is by its nature a distinct proceeding.' *State* v. *Asherman,* 180 Conn. 141, 144, 429 A.2d 810 (1980)." *State* v. *Servello,* 14 Conn. App. 88, 101, 540 A.2d 378 (1988).

The defendant did not bring a separate action in this case, instead filing his motion within the confines of the docketed criminal matter. "Accordingly, the trial court should have dismissed the defendant's [motion] for a new trial because it was improperly brought, and we do not review the trial court's denial of that [motion]." Id., 102.

There is error in part and the case is remanded for further proceedings in conformity with this opinion.

In this opinion the other judges concurred.

cause, according to the usual rules in such cases. The judges of the superior court may in addition provide by rule for the granting of new trials upon prompt request in cases where the parties or their counsel have not adequately protected their rights during the original trial of an action."